STATE ex rel., ATCHISON, TOPEKA
& SANTA FE RR., Relator,

v.

Honorable John R. O'MALLEY,
Respondent.

No. WD 49497.

Missouri Court of Appeals,
Western District.

Dec. 13, 1994.

Douglas R. Dalgleish, Kansas City, for re-
lator.

Daniel J. Cohen, Edwardsville, IL, for respondent.

Before HANNA, P.J., and BRECKENRIDGE and SMART, JJ.

HANNA, Judge.

In the underlying case, plaintiff Charles Herriman seeks to recover damages from relator Atchison, Topeka & Santa Fe Railway Company. Plaintiff Herriman's petition for damages was brought under the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.* (FELA), alleging that the relator "by and through its agents and employees" was negligent. Plaintiff's interrogatories sought and obtained the names of three individuals who were identified as relator's supervisors and employees who were working or present at the scene of the incident. Relator filed a motion seeking an order of protection from the respondent prohibiting the plaintiff's attorney from ex parte contact with the identified employees. The trial court ruled:

1. Defendant's Motion for Protective Order is **OVERRULED.** Plaintiff is free to initiate ex parte contacts with defendant's employees under 45 U.S.C. Section 60.

2. Plaintiff is limited in his ex parte contacts to investigating the accident. (Plaintiff may not use these statements at trial if they come from managerial personnel who are in a position to bind the Corporation).

The respondent's order effectively opened the door for the plaintiff to obtain ex parte statements from any of relator's employees. Relator filed a petition for a writ of prohibition and mandamus with this court and a preliminary order prohibiting the respondent from enforcing the order was issued. That order is now made permanent.

This case requires interpretation of a supposed conflict between § 60 of FELA and Missouri Supreme Court Rule 4–4.2. Rule 4–4.2 states as follows:

In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

Relator argues that *State ex rel. Pitts v. Roberts,* 857 S.W.2d 200 (Mo. banc 1993), gives its employees "party" status under Rule 4–4.2 and protects them from ex parte contact by plaintiff's attorney. Conversely, the respondent, through the plaintiff, maintains that 45 U.S.C. § 60 (1986) prevents relator from using any device which has as its purpose to prevent employees from voluntarily furnishing information to plaintiff's counsel. Respondent maintains that the term "authorized by law" found in Rule 4–4.2 exempts plaintiff's counsel from the dictates of that rule, in that § 60 authorizes ex parte communication in FELA cases.

A writ of prohibition and mandamus is the proper remedy for curing discovery rulings that exceed a court's jurisdiction or constitute an abuse of the court's discretion. *State ex rel. Lichtor v. Clark,* 845 S.W.2d 55, 59 (Mo.App.1992). Prohibition lies to prevent the forced disclosure of information during discovery, particularly when the information is protected by a statute, rule or privilege. *State ex rel. State Bd. of Pharmacy v. Otto,* 866 S.W.2d 480, 485 (Mo.App. 1993).

Counsel's authorization to contact opposing corporate employees and a determination of whether the corporate employees are considered a "party" for the purposes of Rules 56.01(b)(3)[1] and 4–4.2 was decided in *Pitts.* The Supreme Court adopted the three category test contained in the official comment to Rule 4–4.2 for determining the persons accorded a protected status under that rule. *Pitts,* 857 S.W.2d at 202. The comment states:

In the case of an organization, this Rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having the managerial responsibility on behalf of the organi-

---

[1]. Rule 56.01(b)(3) allows a party to obtain through discovery any statements made by that party. Since the parties in this case agree that no ex parte contacts have occurred at this time, that rule is irrelevant to this decision.

zation, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization.

Under the *Pitts* test, protected individuals are identified as (1) persons having managerial responsibility; (2) persons whose acts or omissions may be imputed to the corporation; and (3) persons whose statements may constitute admissions by the corporation.[2] *Id.* The court described its decision as a functional approach to the problem, acknowledging "the practical considerations of the real world." *Id.*

Plaintiff acknowledges that *Pitts* and Rule 4–4.2 prohibit ex parte contact with a represented party, but contends that § 60 allows a FELA plaintiff or his attorney to initiate ex parte communications with the relator's employees. He argues that such ex parte contact is "authorized by law," and therefore would not be in violation of Rule 4–4.2. Section 60 provides in relevant part:

Any contract, rule, regulation or device whatsoever, the purpose, intent, or effect of which shall be to prevent employees of any common carrier from furnishing voluntarily information to a person in interest as to the facts incident to the injury or death of any employee, shall be void....

*Branham v. Norfolk & W. Ry.,* 151 F.R.D. 67 (S.D.W.Va.1993), interpreted § 60 as prohibiting "conduct on the part of the railroad-employer which inhibits the furnishing of information by an employee, not to ethical rules regulating the conduct of an 'officer of the [court].'" *Id.* at 71 (footnote omitted). In making its decision, the court considered the legislative history behind § 60. Congress' focus was directed at railroad rules which prohibited employees from talking to injured workers or their lawyers and at attempts by the railroad to intimidate its employees. The Senate Report explains:

[A] substantial number of the railroads subject to [FELA] have promulgated rules which prohibit employees from giving information concerning an accident to anyone excepting certain specified company officials and claim agents.

The purpose of the amendment under consideration is to prohibit the enforcement of such rules and permit those who have information concerning the facts and circumstances of a personal injury to give statements to the injured employee or his dependents, or to someone authorized to represent him or them.

S.Rep. No. 661, 76th Cong., 1st Sess. 5 (1939). For an example of railroad conduct that Congress sought to prevent, see *Harper v. Missouri Pac. R.R.,* 264 Ill.App.3d 238, 201 Ill.Dec. 760, 636 N.E.2d 1192 (1994), in which the railroad had a rule which threatened discipline, including termination, of employees who provided information about job-related accidents to anyone outside of the railroad. *Id.* 636 N.E.2d at 1200.

Missouri has not directly ruled whether, in a FELA action, § 60 renders Rule 4–4.2, as defined by *Pitts,* inapplicable to FELA plaintiffs and their attorneys. Other jurisdictions have addressed the question. The federal district court in *Tucker v. Norfolk & W. Ry.,* 849 F.Supp. 1096 (E.D.Va.1994), had before it an almost identical rule enacted by the state of Virginia prohibiting counsel from engaging in ex parte communications. *See* Va.Code of Prof.Resp. DR 7–103(A). The court held that § 60 did not supersede the command of Virginia's attorney ethical rules and that the ex parte contact with enumerated employees was unauthorized. *Id.* at 1101. The court's rationale was that § 60 prohibited the railroad from engaging in a policy or practice of intimidation barring employees from furnishing information regarding the facts of an accident voluntarily, as opposed to prohibiting the state from regulating attorney conduct. *Id. (citing Garrett v. National*

---

**2.** It appears that one or more of the employees identified in the interrogatory answers were individuals that would fall within one of the three enumerated categories. In any event, the parties have not made this an issue. We proceed on the basis that it is not an issue but note, parenthetically, that the court order allows unrestricted ex parte communications with any and all of relator's employees. Because we have not been provided with sufficient information as to whether any of the individuals are protected witnesses, we do not suggest that the trial court is prohibited from issuing further orders in accordance with the Pitts analysis.

*Ry. Passenger Corp.,* Civ.A. No. 89–8326, 1990 WL 122911 (E.D.Pa. Aug. 14, 1990) (involving a Pennsylvania ethical rule identical to Missouri's Rule 4–4.2)). See also *Queensberry v. Norfolk & W. Ry.,* 157 F.R.D. 21 (E.D.Va.1993), and *Branham* in which the plaintiffs argued that § 60 supplied the "authorized by law" contemplated in the state ethical rules. *Queensberry,* 157 F.R.D. at 23; *Branham,* 151 F.R.D. at 70–71. Those courts held that the prohibition of § 60 referred to railroad conduct and not to the states' ethical rules governing attorney conduct. *Queensberry,* 157 F.R.D. at 25; *Branham,* 151 F.R.D. at 71.[3]

■ Section 60, Rule 4–4.2 and the *Pitts* decision can be read harmoniously. Section 60 refers to conduct on the part of the railroad/employer which inhibits the furnishing of information by an employee of the railroad, not to the ethical rules regulating the conduct of an attorney who is an officer of the court. It was designed to combat retaliatory rules and practices that some railroads used to completely prevent their employees from furnishing information for FELA litigation. No such rule or practice has been suggested here. Neither Rule 4–4.2 nor *Pitts* denies access to these witnesses. A railroad attorney's presence at the time of the employee interview does not prevent a full free flow of information or intimidate the employee, and any affirmative conduct on the part of the railroad to stifle the employee witness is already specifically prohibited by § 60. *See Queensberry,* 157 F.R.D. at 25; *Tucker,* 849 F.Supp. at 1101.

It would be an illogical rule that made the identical attorney conduct ethical or unethical depending on the underlying law of the client's cause of action. Before we adopt such a rule, there must be a clear expression of the intention of the federal law to supersede the traditional responsibility of the state to proscribe the standards by which officers of the court will be judged.

■ Federal legislation should not be interpreted to override state regulations concerning matters traditionally within the purview of state government unless no other construction of the federal enactment is possible. In *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), the Supreme Court held that antitrust laws should not be applied to state action in the absence of explicit statements that Congress intended to override state regulations. *Id.* at 350–51, 63 S.Ct. at 313. Recently, in *Cipollone v. Liggett Group, Inc.,* —— U.S. ——, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992), the Supreme Court analyzed the pre-emption doctrine, stating that the "historic police powers of the States [are] not to be superseded by . . . Federal Act unless that [is] the clear and manifest purpose of Congress." *Id.* at ——, 112 S.Ct. at 2617.

■ The responsibility of regulating lawyers is an important governmental function in the administration of justice, and the responsibility has historically been reserved to the sovereign states. As was correctly stated in *In re FMC Corp.,* 430 F.Supp. 1108 (S.D.W.Va.1977), a state's ethical rules are "the product of experience gained over the decades, even the centuries, and are designed to establish and assure standards of simple fairness and moral and ethical responsibility on the part of counsel in furtherance of the ends of justice." *Id.* at 1110. The Missouri Supreme Court has defined the judiciary as an independent branch of government with the "inherent power to fully regulate the admission and disbarment of its attorney officers, to accomplish all objects within its orbit, and to provide procedure by rule." *In re Conner,* 357 Mo. 270, 207 S.W.2d 492, 495 (Banc 1948). Section 60 should not be read to override Missouri's Rules of Professional Conduct where the federal statute does not express a "clear and manifest purpose of Congress" to displace state regulation of members of the legal profession.

Absent clear and manifest purpose that Congress intended to pre-empt state law, we do not choose an interpretation that obviates the Missouri Supreme Court's obligation to

---

3. For cases supporting respondent's argument, see, e.g., *Norfolk S. Ry. v. Thompson,* 208 Ga. App. 240, 430 S.E.2d 371 (1993) and *Harper v. Missouri Pac. R.R.,* 264 Ill.App.3d 238, 201 Ill. Dec. 760, 636 N.E.2d 1192 (1994).

**764**

control the ethical considerations of its state bar members.

The writ is made permanent.

All concur.