961 F.Supp. 1288 (1997)
UNITED STATES ex rel. Daniel G. O'KEEFE, Plaintiffs,
v.
McDONNELL DOUGLAS CORPORATION, Defendants.
No. 4:93CV02188 GFG.
United States District Court, E.D. Missouri, Eastern Division.
March 10, 1997.
*1289 Daniel J. McMichael, McMichael and Logan, Chesterfield, MO, Claire M. Schenk, Office of U.S. Atty., St. Louis, MO, Michael F. Hertz, Stanley E. Alderson, U.S. Dept. of *1290 Justice, Civ. Div., Washington, DC, Francis E. Pennington, III, Daniel V. Conlisk, Dankenbring and Greiman, St. Louis, MO, for U.S. ex rel. Daniel G. O'Keefe.
Stephen H. Rovak, Roger K. Heidenreich, Robert F. Scoular, Sonnenschein and Nath, St. Louis, MO, David J. Massa, Charles A. Weiss, Veryl L. Riddle, Bryan Cave, St. Louis, MO, for McDonnell-Douglas Corp.
Claire M. Schenk, Office of U.S. Atty., St. Louis, MO, Michael F. Hertz, Stanley E. Alderson, Anthony M. Alexis, U.S. Dept. of Justice, for U.S.

MEMORANDUM AND ORDER
GUNN, District Judge.
This matter is before the Court on various discovery motions. Following a conference with the parties, the Court issued an order staying its December 3, 1996, order resolving these motions. Document 114. The United States moved for reconsideration of the December 3 order. Document 115. The Court indicated at the conference that it would reconsider its rulings on all motions. Accordingly, the Government's motion for reconsideration is GRANTED.
Upon reconsideration and for the reasons stated in the December 3 order, the Court adheres to its prior rulings on (1) defendant's motion to compel answers to interrogatories, Document 85, and (2) defendant's motion to compel production of documents, Document 86.
The Court, however, will modify its ruling on defendant's motion to compel deposition testimony and production of documents. Document 92. After carefully considering the evidence submitted, the Court will deny defendant's motion for an order compelling the Government immediately to produce another designee pursuant to defendant's Fed. R.Civ.P. 30(b)(6) notice to testify as to the matters listed in subparts 2(a)-(l) of defendant's motion.[1] The Government's designees testified responsively to defense counsel's questions to the best of their knowledge. Although the Court understands defense counsel's frustration with the qualified and equivocal responses given by the Government's witnesses, the Court does not believe reconvening the Rule 30(b)(6) deposition would be productive at this time.
The Court's ruling is without prejudice to defendant's right to schedule another Rule 30(b)(6) deposition sixty days prior to the conclusion of discovery to require the Government's designees to supplement their responses regarding all matters listed in the original notice. This will provide defendant with an opportunity to examine the Government's designees prior to trial based on the information the Government has obtained through further investigation.[2] The Court is confident that the Government will provide more specific and concrete responses at that time or will be prepared to dismiss unsupported allegations from the complaint.
The Court also grants in part and denies in part defendant's motion to overrule the Government's deposition objections and instructions not to answer on the basis of work product. Document 92, subpart 3. Defendant is entitled to inquire into the factual bases of the Government's allegations. Defendant may not, however, ask questions which tend to reveal counsel's advice, counsel's view as to the significance of specific facts, or counsel's questions to third-party witnesses because these matters are protected by the work-product doctrine. See, e.g., People ex rel. Vacco v. Mid Hudson Medical Group, P.C., 877 F.Supp. 143, 150-51 (S.D.N.Y.1995); Protective Nat'l Ins. Co. v. Commonwealth Ins. Co., 137 F.R.D. 267, 283 (D.Neb.1989); Connolly Data Sys., Inc. v. Victor Tech., Inc., 114 F.R.D. 89, 96 (S.D.Cal. 1987). If defendant reconvenes the Rule 30(b)(6) deposition, defense counsel shall phrase his or her questions in such a way as to avoid implicating these matters.
*1291 With respect to witness statements, defendant is entitled to discover any written statement made by defendant's employees which the Government may attempt to use at trial as an admission. See Thornton v. Continental Grain Co., 103 F.R.D. 605, 606 (S.D.Ill.1984).[3] Defendant may also depose the Government's representative concerning the factual information obtained from these witnesses. Raso v. CMC Equip. Rental, Inc., 154 F.R.D. 126, 128 (E.D.Pa.1994).
The Court agrees with defendant that questions concerning when the Government discovered certain matters is not covered by the work-product doctrine. Accordingly, the Government's objections to such questions are overruled.
Finally, the Government shall respond to all of defendant's requests for production of documents served in connection with the Rule 30(b)(6) notice. To the extent this request duplicates defendant's previous request for production, the Government shall notify the defendant of the documents it has produced which are responsive to this request and shall supplement all responses pursuant to Fed.R.Civ.P. 26(e).
The Court next turns to defendant's motion for a protective order. Document 94. Defendant seeks an order (1) barring the Government from contacting its current employees ex parte about the subject matter of this litigation; (2) requiring the Government to give defendant 10 days notice before contacting any former employee concerning the subject matter of this action; (3) requiring the Government to provide defendant with a list of all employees it has contacted ex parte since intervening in this action; (4) requiring the Government to provide defendant with all information obtained from its employees in this manner; and (5) barring the Government from using any documents or information obtained through ex parte contacts.
At the outset, the Court rejects the Government's contention that it lacks authority to issue the protective order based on the alleged violation of the rules of professional conduct. This Court has inherent authority to impose sanctions for conduct which abuses the judicial process. Harlan v. Lewis, 982 F.2d 1255, 1259 (8th Cir.), cert. denied, 510 U.S. 828, 114 S.Ct. 94, 126 L.Ed.2d 61 (1993); Chancellor v. Boeing Co., 678 F.Supp. 250, 253 (D.Kan.1988).
The ex parte contacts at issue concern a questionnaire sent to defendant's current and former employees by the Defense Criminal Investigative Service of the Inspector General of the Department of Defense at the direction of the Government's attorneys. The questionnaire asks whether the employee ever engaged in mischarging of labor, and, if so, at the direction of whom. Document 94, exh. A. Defendant correctly observes that the mischarging allegations are central to the Government's cause of action under the False Claims Act. See U.S. ex rel. O'Keefe v. McDonnell Douglas Corp., 918 F.Supp. 1338, 1341 (E.D.Mo.1996) (describing mischarging allegations).
Defendant argues that the ex parte contacts violate Missouri Supreme Court Rule 4-4.2,[4] which provides:
In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.
The comment to the Rule explains its applicability to organizations such as defendant:
In the case of an organization, this Rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization.
*1292 The Missouri Supreme Court adopted the comment and its three-category test for determining which persons within an organization should be accorded protected status under Rule 4-4.2 in State ex rel. Pitts v. Roberts, 857 S.W.2d 200, 202 (Mo.1993). Explaining its approval of the comment, the Court stated: "This test focuses neither upon a bright line hierarchical structure nor a bright line temporal distinction regarding which employee shall be treated as a party, but instead sets out a functional approach designed to be sensitive to the practical considerations of the real world." Id. at 202.
Defendant contends that under the Government's theory of the case, liability may be imputed to the defendant based on the acts of all of its current employees regardless of status or rank. The Government does not dispute this statement, but instead argues that Rule 4-4.2 does not encompass all employees whose conduct could be imputed to the organization.
The Court must reject the Government's argument that Rule 4-4.2 does not encompass all employees whose conduct may be imputed to the organization. This argument is inconsistent with Pitts and with the plain language of the comment to Rule 4-4.2.
To determine whether defendant's employees are persons whose acts or omissions may subject defendant to liability, the Court must refer to the substantive law. Pitts, for example, was an action to recover for property damage resulting from the allegedly negligent installation of a water heater in a mobile home. 857 S.W.2d at 201. Plaintiffs' counsel took statements from the defendant's employees prior to the commencement of the lawsuit. Defendant then sought access to the statements during discovery as the statements of a party and argued that counsel should not have taken the statements ex parte. Id. The Missouri Supreme Court determined that the employees (who allegedly performed the negligent installation) were persons whose acts or omissions could be imputed to the organization for purposes of civil liability within the meaning of the comment to Rule 4-4.2. Accordingly, the Court held that plaintiffs' counsel should not have conducted the ex parte interviews or taken the statements and that counsel had to turn the statements over to defendant. Id. at 202.
Here, the substantive law involved is the False Claims Act, which prohibits, among other things, persons or entities (1) from knowingly presenting or causing to be presented to the United States a false or fraudulent claim for payment; and (2) from knowingly making, using, or causing to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government. 31 U.S.C. § 3729(a)(1)-(2). The Act defines knowingly as: (1) having actual knowledge of the false information; (2) acting in deliberate ignorance of the truth or falsity of the information; or (3) acting in reckless disregard of the truth or falsity of the information. Id., § 3729(b). Liability under the False Claims Act may be imposed on corporations for the acts of their employees under a theory of respondeat superior. See, e.g., United States v. O'Connell, 890 F.2d 563, 568-69 (1st Cir.1989) (holding liability may be imposed on corporation for acts of one-third owner and general manager); Grand Union Co. v. United States, 696 F.2d 888, 890-91 (11th Cir.1983) (holding knowledge of check-out cashiers, who accepted food stamps for ineligible items, could be imputed to corporation); United States v. Hangar One, Inc., 563 F.2d 1155, 1158 (5th Cir.1977) (holding liability may be imposed based on acts of employees acting within scope of authority for purpose of benefitting corporation; employees involved need not have substantial authority or broad responsibility); United States v. Incorporated Village of Island Park, 888 F.Supp. 419, 437-38 (E.D.N.Y.1995) (holding municipal corporation may be liable for clerk's illegal manipulation of federal housing program); United States v. Truong, 860 F.Supp. 1137, 1138-39 (E.D.La.1994) (holding corporation may be liable based on cashier's illegally trading cash for food stamps).
In view of these authorities, the Court concludes defendant may be held civilly liable under the False Claims Act for the acts or omissions of its current employees who were involved in the alleged mischarging. *1293 Therefore, the comment to Rule 4-4.2 covers defendant's employees allegedly involved in the mischarging. See Terra Int'l, Inc. v. Mississippi Chem. Corp., 913 F.Supp. 1306, 1321-23 (N.D.Iowa 1996).[5] Accordingly, under the Court's interpretation of Rule 4-4.2, the Government may not make ex parte contact with defendant's employees who were allegedly involved in the mischarging.
The Court notes, however, that "[s]ome current employees may be only `fact witnesses' who hold factual information about what they observed others doing." Id. at 1321. Simply because an employee witnessed an event for which the organization is sued does not make that employee a party under Rule 4-4.2. See Cole v. Appalachian Power Co., 903 F.Supp. 975, 977-79 (S.D.W.Va.1995). Therefore, the Government may contact such "fact witness" employees ex parte.
Rule 4-4.2 permits ex parte communications which are "authorized by law." The Government argues that the contacts at issue are authorized by 28 C.F.R. pt. 77, a regulation promulgated by the Department of Justice ("DOJ") to govern communications by DOJ attorneys with represented persons, and 31 U.S.C. § 3730(a), which requires the Attorney General to investigate violations of the False Claims Act diligently. Document 98 at 8-11.
The Government's reliance on § 3730(a) is misplaced. The Missouri Court of Appeals for the Western District recently rejected a similar argument in State ex rel. Atchison, Topeka & Santa Fe R.R. v. O'Malley, 888 S.W.2d 760 (Mo.Ct.App.1994). There, plaintiff argued that a provision of the Federal Employers' Liability Act allowed his attorney to contact defendant's employees ex parte, notwithstanding Rule 4-4.2. Id. at 761. The Court stated: "Before we adopt such a rule, there must be a clear expression of the intention of the federal law to supersede the traditional responsibility of the state to proscribe the standards by which officers of the court will be judged." Id. at 763. No such clear expression exists in the False Claims Act.
The Government's reliance on 28 C.F.R. pt. 77 presents a more difficult question. The regulation covers the subject of communications between DOJ attorneys and represented persons and parties. Under the regulation, "[a] communication with a current employee of an organization that qualifies as a represented party or represented person shall be considered to be a communication with the organization for purposes of this part only if the employee is a controlling individual." Id. § 77.10(a).[6] The regulation defines controlling individual as "a current high level employee who is known by the government to be participating as a decision maker in the determination of the organization's legal position in the proceeding or investigation of the subject matter." Id. The regulation states that "[c]ommunications ... pursuant to this part are intended to constitute communications that are `authorized by law' within the meaning of Rule 4.2 of the American Bar Association Model Rules of Professional Conduct ... and analogous state and local federal court rules." Id., § 77.12. Finally, the regulation provides:
[T]his part is intended to preempt and supersede the application of state laws and rules and local federal court rules to the extent that they relate to contacts by attorneys for the government, and those acting at their direction or under their supervision, with represented parties or persons in criminal or civil law enforcement investigations or proceedings; it is designed to preempt the entire field of rules concerning such contacts.
Id.[7]
Defendant maintains the DOJ lacks statutory authority to promulgate the *1294 regulation; thus, the regulation does not carry the force of law. In the regulation, the DOJ cites as statutory authority 5 U.S.C. § 301, and 28 U.S.C. §§ 509, 510, 515(a), 516, 519, 533, and 547. For regulations issued by an agency or executive department to have the force of law, they must be promulgated pursuant to statutory authority. Chrysler Corp. v. Brown, 441 U.S. 281, 302, 99 S.Ct. 1705, 1717, 60 L.Ed.2d 208 (1979). The grant of authority need not be specific, but a reviewing court must "reasonably be able to conclude that the grant of authority contemplates the regulations issued." Id. at 308, 99 S.Ct. at 1721.
After careful consideration, the Court concludes that the general statutes cited by the DOJ do not authorize it to issue regulations which exempt its attorneys from the requirements of state ethical rules. The Department of Justice Appropriation Authorization Act requires all DOJ attorneys to be licensed to practice as an attorney under the laws of a state, territory, or the District of Columbia. Ferrara, 847 F.Supp. at 969 (quoting Pub.L. No. 96-132, 93 Stat. 1040, 1044 (1979) (appropriations for fiscal year 1980); (citing Pub.L. No. 102-395, 106 Stat. 1828, 1838, § 102(a)) (appropriations for fiscal year 1993). To be licensed to practice, an attorney must comply with the state bar's ethical standards. Id. Accordingly, the Court concludes that "Congress intended federal lawyers to be subject to regulation by the state bars of which they are members", and to comply with the appropriate ethical standards. Id.
Moreover, additional evidence suggests that Congress did not intend to authorize the DOJ to promulgate the regulations at issue. In 1990, the House Subcommittee on Government Information, Justice, and Agriculture held a hearing which addressed the propriety of the Thornburgh Memorandum. See Delker, Ethics and the Federal Prosecutor, supra note 6, at 878. After reviewing the evidence adduced at the hearing, the Subcommittee concluded:
We disagree with the Attorney General's attempts to exempt departmental attorneys from compliance with the ethical requirements adopted by the State bars to which they belong and in the rules of the Federal Courts before which they appear. While recognizing that it is ultimately the courts who finally decide disputes over such authority, we nevertheless urge reconsideration and withdrawal of the Attorney General's June 8, 1989 memorandum, "Communication with Persons Represented by Counsel."
Subcommittee on Government Information, Justice, and Agriculture, Committee on Government Operations, Federal Prosecutorial Authority in a Changing Legal Environment: More Attention Required, H.R.Rep. No. 986, 101st Cong., 2d Sess. at 32 (1990).
Further, in Lopez, the Ninth Circuit rejected the Government's contention that 28 U.S.C. §§ 509, 515(a) and (c), 516, 533, and 547  some of the same statutes the DOJ cites as authority for its regulation  authorized prosecutors to communicate with represented individuals under the California no-contact rule. The Court observed that "the statutes cited by the government are nothing more than general enabling statutes. Nothing in these provisions expressly or impliedly authorizes contact with represented individuals beyond that permitted by case law." Lopez, 4 F.3d at 1461. The Court agrees with this analysis and concludes that the statutes *1295 cited in the regulation do not authorize the DOJ to exempt its attorneys from complying with state bar and federal court ethical rules.[8]
The Court finds additional support for its conclusion in the long history of state regulation of the legal profession. As the Supreme Court has observed:
Since the founding of the Republic, the licensing and regulation of lawyers has been left exclusively to the States and the District of Columbia within their respective jurisdictions. The States prescribe the qualifications for admission to practice and the standards of professional conduct. They are also responsible for the discipline of lawyers.
Leis v. Flynt, 439 U.S. 438, 442, 99 S.Ct. 698, 700-01, 58 L.Ed.2d 717 (1979) (per curiam) (footnote omitted). Thus, absent more explicit guidance from Congress, the Court declines to read the general statutes cited by the DOJ as authority for displacing state ethical rules.
Finally, the Court finds the DOJ's efforts to exempt its attorneys from complying with state ethical rules disappointing. As the District Court in Lopez observed:
In light of the prominent and unique role of the Department of Justice in this country's litigation, the suggestion that DOJ attorneys should be exempted from a longstanding and universally applied ethical norm is alarming. Former Chief Justice Burger aptly characterized the Department of Justice as the world's largest law firm and noted that its various Divisions work together toward the ultimate objective for which they were created  to promote the interests of the sovereign and of the public.... As the nation's litigator, the Department and its attorneys must be held accountable to the same court-adopted ethical rules that govern all other lawyers.
765 F.Supp. at 1449-50 (internal quotations, citations and footnotes omitted).
With respect to former employees, the Court agrees with the Government that Rule 4-4.2 does not prohibit all ex parte contact with former employees. Only former employees who are in fact represented by the former employer's counsel or any counsel are off limits under Rule 4-4.2. Terra Int'l, 913 F.Supp. at 1315. Nevertheless, because the statements of some of defendant's former employees may subject defendant to liability, the Court agrees with defendant that some limits should be placed on the Government's access to these employees. Accordingly, the Government may contact defendant's former employees ex parte, but must maintain a list of all former employees contacted, the date(s) of the contact(s) and shall maintain and preserve statements, notes, or answers to questionnaires obtained as a result of the contacts. Defendant may review the lists and notes upon request, subject to work-product limitations. See Lang v. Reedy Creek Improvement Dist., 888 F.Supp. 1143, 1148-49 (M.D.Fla.1995). Defendant must give the Government ten days to provide access to the requested information.
The Court will also grant defendant's request to order the Government to provide defendant with a list of all employees it has contacted ex parte since intervening in this action and to provide defendant with all information obtained from its employees in this manner. See Pitts, 857 S.W.2d at 202. The Court will, however, deny defendant's request to preclude plaintiff from using the information gained from the ex parte contacts at trial. Any unfair advantage the Government may have obtained will be cured when the information is turned over to defendant.
Finally, both parties accuse the other of harassing and intimidating witnesses. Documents 94, 96. The Government and the relator maintain that defendant has threatened employees with termination for cooperating in the investigation. Documents 98, 106. The Court will deny these motions without prejudice. The parties are warned, however, to refrain from engaging in any activity that *1296 could be construed as harassment or intimidation of potential witnesses.
In light of the foregoing,
IT IS HEREBY ORDERED that plaintiff's motion for reconsideration, Document 115, is GRANTED.
IT IS FURTHER ORDERED that defendant's motion to compel answers to interrogatories, Document 85, is GRANTED.
IT IS FURTHER ORDERED that defendant's motion to compel production of documents, Document 86, is GRANTED in part and DENIED in part.
IT IS FURTHER ORDERED that defendant's motion to compel deposition testimony and production of documents, Document 92, is GRANTED in part and DENIED in part as set forth above.
IT IS FURTHER ORDERED that defendant's motion for a protective order, Document 94, is GRANTED in part and DENIED in part as set forth above.
IT IS FURTHER ORDERED that plaintiff's motion for a protective order, Document 96, is DENIED without prejudice as set forth above.
NOTES
[1] The Court notes that subpart h of defendant's motion to compel deposition testimony concerns the issue of damages. The Government must provide information regarding damages in response to defendant's interrogatory number 10.
[2] Alternatively, defendant may seek to obtain the same information through contention interrogatories. See United States v. Taylor, 166 F.R.D. 356, 362 n. 7 (M.D.N.C.), aff'd, 166 F.R.D. 367 (M.D.N.C.1996).
[3] The Court recognizes that the Government contends no such statements exist. Document 97 at 10.
[4] By local rule, this Court has adopted the Code of Professional Responsibility adopted by the Supreme Court of Missouri. See E.D.Mo. L.R. 12.02.
[5] The fact that the contacts were made by a Government investigator acting at the behest of the Government's attorney does not alter the analysis. See United States v. Hammad, 858 F.2d 834, 838 (2d Cir.1988), cert. denied, 498 U.S. 871, 111 S.Ct. 192, 112 L.Ed.2d 154 (1990).
[6] The terms "represented person" and "represented party" are defined in § 77.3.
[7] This regulation is not the DOJ's first attempt to exempt its attorneys from compliance with state ethical rules. Since at least 1980, the DOJ has maintained that its attorneys are not bound by state ethical codes and local federal court rules regarding contacts with represented persons and parties. In Hammad, however, the Second Circuit explicitly rejected the Government's position that DR 7-104, the predecessor to Rule 4.2, did not apply to DOJ attorneys. After the Hammad decision, then-Attorney General Richard Thornburgh issued what has become known as the "Thornburgh Memorandum", which purported to exempt as a matter of policy DOJ litigators from complying with DR 7-104 in criminal investigations. The DOJ's position was rejected by every court to address the issue. See United States v. Ferrara, 847 F.Supp. 964, 968-70 (D.D.C.1993), aff'd, 54 F.3d 825 (D.C.Cir.1995); In re Doe, 801 F.Supp. 478, 484-87 (D.N.M. 1992); United States v. Lopez, 765 F.Supp. 1433, 1445-50 (N.D.Cal.1991), vacated, 989 F.2d 1032 (9th Cir.), amended and superseded, 4 F.3d 1455 (9th Cir.1993). In response to these setbacks, the DOJ promulgated 28 C.F.R. pt. 77. See generally Neals-Erik William Delker, Comment, Ethics and the Federal Prosecutor: The Continuing Conflict Over Application of Model Rule 4.2 to Federal Attorneys, 44 Am. U.L.Rev. 855, 862-74 (1995) (discussing in detail development of DOJ's position) [hereinafter Ethics and the Federal Prosecutor].
[8] The other statutes cited in the regulation but not addressed in Lopez, 5 U.S.C. § 301 and 28 U.S.C. §§ 510 and 519, are similarly general in nature and cannot be read to authorize the regulation at issue.