**Wayne L. PRATT, Plaintiff,**

v.

**NATIONAL RAILROAD PASSENGER CORPORATION, Defendant.**

**No. Civ.A. 97–11792–WGY.**

United States District Court,
D. Massachusetts.

June 28, 1999.

William G. Talis, Law Office of William G. Talis, Boston, MA, David L. Lockard, Philadelphia, PA, Anthony M. Santoro, Medford, MA, for Wayne L. Pratt, plaintiff.

Wayne L. Pratt, Clinton, TN, pro se,

Thomas P. O'Reilly, Paul M. Moretti, Curtin, Murphy & O'Reilly, PC, Boston, MA, for National Railroad Passenger Corporation, defendant.

### *MEMORANDUM*

YOUNG, Chief Judge.

### I. INTRODUCTION.

On December 14, 1995, the plaintiff in this action, Wayne L. Pratt ("Pratt"), suffered an injury while opening the doors on a railroad baggage car owned by the defendant, National Railroad Passenger Corporation ("Amtrak"). Pratt brought an action for personal injury against Amtrak pursuant to the Federal Employers' Liability Act (the "Act"), 45 U.S.C. §§ 51–60. After a full trial, the jury declined to hold Amtrak liable under the Act. This opinion deals with an ethical matter raised during trial. It in no way undercuts the jury's verdict.

During discovery, the plaintiff's counsel, David L. Lockard ("Lockard"), learned that an Amtrak foreman, Tom Reilly ("Reilly"), inspected the relevant baggage car only hours after Pratt's injury and prepared a report describing the condition of its doors. Through correspondence with Amtrak's attorneys, Lockard attempted to schedule a deposition of Reilly. After Amtrak repeatedly refused to produce Reilly, Lockard took matters into his own hands and conducted an ex parte deposition of Reilly.

On the eve of trial, Amtrak moved to exclude the Reilly deposition on the ground that Lockard's ex parte interview violated the ethical rules of the Supreme Judicial Court of Massachusetts. This Court also expressed concerns that Lockard's actions potentially constituted ethical misconduct subject to discipline under the Local Rules of the United States District Court for the District of Massachusetts (the "Local Rules"). Since the deposition revealed highly probative evidence, however, this Court refused to exclude the data. Moreover, the Court is now satisfied that Lockard's behavior was both appropriate and in compliance with ethical requirements.

## II. LOCAL RULES PROHIBITION AGAINST EX PARTE CONTACT.

■ Under the Local Rules, attorneys practicing in this District must comply with the ethical requirements concerning the practice of law in the Commonwealth of Massachusetts embodied in the Massachusetts Rules of Professional Conduct. *See* Local Rule 83.6(4)(B). Failure constitutes misconduct and warrants discipline. *See id.*

Rule 4.2 of the Massachusetts Rules of Professional Conduct as incorporated in Rule 3.07 of the Rules of the Supreme Judicial Court of Massachusetts provides:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

Historically, this rule is justified by the need to preserve the mediating role of counsel on behalf of their clients and to protect clients from overreaching by counsel for adverse interests. *See* Irving Younger, The Lawyer's Relations with Non–Clients, *in Professional Responsibility* 123, 124 (Davidson Ream ed., 1978); *see also Grievance Comm. for S. Dist. of New York v. Simels,* 48 F.3d 640, 647 (2nd Cir.1995).

The rule works well as to individual clients; it works less well with respect to corporate clients since it is never entirely clear in the corporate context just who is the "client."

■ If the rule's prohibition were limited to the corporation's "control group," i.e., those persons with authority to seek and act upon legal advice for the corporation, *see* 19 William G. Young, John R. Pollets & Christopher Poreda, Massachusetts Practice, *Evidence* § 503.3, at 264 (2d ed.1998), it would cause little difficulty. But the Massachusetts ethical rule is far from limited. Indeed, it is measured not by reference to the attorney-client privilege at all, but rather by the scope of the evidentiary rule admitting the statements of an employee in an action against the corporate employer. *See* Massachusetts Rules of Professional Conduct, Rule 4.2 Comment [4].[1] Both the Massachusetts and

---

1. In relevant part, Comment 4 provides:
   In the case of an organization, this Rule prohibits communications by a lawyer for another person or entity concerning the matter in representation with persons having managerial responsibility on behalf of the organization with regard to the subject matter of the representation, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability, or whose statement may constitute an admission on the part of the organization.

federal courts admit against a party opponent any "statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." Fed.R.Evid. 801(d)(2)(D); Mass.Evid. Stand. 801(d)(3)(D) (1995); *Ruszcyk v. Secretary of Public Safety,* 401 Mass. 418, 421–22, 517 N.E.2d 152 (1988). In this district, therefore, the prohibition against attorney contact sweeps far more broadly than does the attorney-client privilege as interpreted either in the federal, *see Upjohn Co. v. United States,* 449 U.S. 383, 383–91, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981), or the Massachusetts courts; *see National Employment Serv. Corp. v. Liberty Mut. Ins. Co.,* No. 93–2528–G 1994 WL 878920, at *1–2 (Mass.Super. Dec. 12, 1994) (Richard Welch, J.). Like the American Bar Association, therefore, Massachusetts follows a rule strikingly protective of corporations.[2] This Court has previously highlighted some of the negative aspects of ethical rules prohibiting ex parte communications with individuals in the corporate context. *See Siguel v. Trustees of Tufts College,* No. 88–0626–Y, 1990 WL 29199, at *3–6 (D.Mass. March 12, 1990); *see also Hurley v. Modern Continental Constr. Co., Inc.,* No. 94–11373–RBC, 1999 WL 95723, at *1–2 (D.Mass. Feb.19, 1999) (Collings, M.J.).

### III. LEGAL AUTHORIZATION FOR SUCH CONTACT

■ Unless his conduct was "authorized by law," therefore, Lockard has violated our Disciplinary Rules for ethical conduct. Lockard, however, contends that, in the FELA context, his conduct was authorized by the Congress of the United States. He points to section 10 of the Act which states:

> Any contract, rule, regulation, or device whatsoever, the purpose, intent, or effect of which shall be to prevent employees of any common carrier from furnishing voluntarily information to a person in interest as to the facts incident to the injury or death of any employee, shall be void, and whoever, by threat, intimidation, order, rule, contract, regulation, or device whatsoever, shall attempt to prevent any person from furnishing voluntarily such information to a person in interest, or whoever discharges or otherwise disciplines or attempts to discipline any employee for furnishing voluntarily such information to a person in interest, shall, upon conviction thereof, be punished by a fine of not more than $1,000 or imprisoned for not more than one year, or by both such fine and imprisonment, for each offense: Provided, That nothing herein contained shall be construed to void any contract, rule, or regulation with respect to any information contained in the files of the carrier, or other privileged or confidential reports.

45 U.S.C. § 60. Lockard argues that both the judicial interpretation and the legislative history of section 10 illustrate that the provision is exactly the type of legal authorization contemplated by Rule 4.2 to permit an attorney to conduct ex parte interviews.

There is a clear split of opinion among those courts that have examined the relationship between section 10 and state ethical rules prohibiting ex parte conduct. At

---

Mass. Rules of Prof. Conduct, Rule 4.2, Comment [4].

**2.** It need not have worked out this way. In Virginia, a commonwealth long compared to Massachusetts for the sophistication of its legal institutions, *see* David Thomas Konig, "The Virgin and the Virgin's Sister: Virginia, Massachusetts, and the contested Legacy of Colonial Law," in *The History of the Law in Massachusetts: The Supreme Judicial Court 1602–1992,* 81–115 (1992), its new Code of Professional Conduct departs from the ABA model and carefully measures the ethical duty to refrain from contact with an adverse party by its common law of attorney-client privilege. *See* Virginia Rules of Professional Conduct, Rule 4.2 Comment [4]. *See generally* The New Virginia Rules of Professional Conduct—A Comparison with the Code (Virginia CLE, 1999).

least eight courts have held that ex parte depositions of represented witnesses in cases brought under the Act are appropriate despite ethical rules to the contrary.[3] While recognizing that the text of section 10 does not specify that ex parte conversations fall within its protection, these courts generally view section 10 as implying the "broadest kind of protection" of voluntary fact-giving and consider ethical rules requiring consent as "obstacle[s] to the free flow of information" envisioned by the drafters of section 10. *United Trans. Union Local Unions 385 and 77 v. Metro-North Commuter R.R. Co.*, No. 94 Civ 2979, 1995 WL 634906, at *4 (S.D.N.Y. Oct.30, 1995).

By contrast, at least seven courts have held that section 10 of the Act does not authorize ex parte contact.[4] These courts read section 10 rather narrowly:

> The obvious purpose of [section 10] is to allow injured railroad workers to obtain needed information about accidents in which they have been involved from their co-workers and to protect those co-workers from retaliation by the railroad. The section is not meant to be an excuse for attorneys representing railroad workers to sidestep their ethical responsibilities as set forth in Rules of Professional Conduct. Rule 4.2 in no way prevents an injured railroad worker from obtaining needed information from his co-workers nor his co-workers from

voluntarily furnishing such information. Such a Plaintiff may depose such co-workers or may request the attorney for the railroad to approve a simple interview.

*See White v. Illinois Cent. R.R. Co.*, 162 F.R.D. 118, 120 (S.D.Miss.1995); *accord Branham v. Norfolk & W. Ry. Co.*, 151 F.R.D. 67, 71 (S.D.W.Va.1993) ("It seems apparent, however, that [section 10] has reference to conduct on the part of the railroad-employer which inhibits the furnishing of information by an employee, not to ethical rules regulating the conduct of an 'officer of the legal system.' ").

The First Circuit has never addressed this issue. Therefore, in order to resolve this split of opinion, this Court necessarily turns to the legislative history of section 10 which can be found almost entirely in a single Senate Committee Report:

> The railroads maintain well-organized and highly efficient claim departments. When an employee is injured, the claim agent promptly endeavors to procure statements from all witnesses to the infliction of the injury, takes photographs, measurements, and obtains all available information considered necessary to protect the railroad company against a possible suit for damages.
>
> On the other hand, the claimant may be seriously handicapped in his attempt to procure the information necessary to the determination of the question of liability.

---

**3.** See *Shaffer v. Union Pac. R.R.*, No. 95–631–FR, 1996 WL 76157, at *2 (D.Or. Feb.14, 1996); *Mayfield v. Soo Line R.R.*, No. 95 C 2394, 1995 WL 715865, at *4 (N.D.Ill.Dec.4, 1995); *United Transp. Union Local Unions 385 and 77 v. Metro-North Commuter R.R. Co.*, No. 94 Civ. 2979, 1995 WL 634906, at *7 (S.D.N.Y. Oct. 30, 1995); *Blasena v. Consolidated Rail Corp.*, 898 F.Supp. 282, 286 (D.N.J. 1995); *Lake v. Orgulf Transp.*, No. 92–2255–M1/A, 1993 WL 194096, at *3 (W.D.Tenn. May 24, 1993); *Faragher v. National R.R. Passenger Corp.*, No. 91–2380, 1992 WL 25729, at *2 (E.D.Pa. Feb.7, 1992); *Harper v. Missouri Pac. R.R. Co.*, 264 Ill.App.3d 238, 201 Ill.Dec. 760, 636 N.E.2d 1192, 1202 (Ill. App.1994); *Norfolk S. Ry. Co. v. Thompson*, 208 Ga.App. 240, 430 S.E.2d 371, 376 (1993).

**4.** See *Belote v. Maritrans Operating Partners, L.P.*, No. 97–3993, 1998 WL 136523, at *6 (E.D.Pa. Mar.20, 1998); *White v. Illinois Cent. R.R. Co.*, 162 F.R.D. 118, 120 (S.D.Miss. 1995); *Tucker v. Norfolk & W. Ry. Co.*, 849 F.Supp. 1096, 1101 (E.D.Va.1994); *Queensberry v. Norfolk & W. Ry. Co.*, 157 F.R.D. 21, 25 (E.D.Va.1993); *Branham v. Norfolk & W. Ry.*, 151 F.R.D. 67, 71 (S.D.W.Va.1993); *Garrett v. National R.R. Passenger Corp.*, No. 89–8326, 1990 WL 122911, at *2 (E.D.Pa. Aug.14, 1990); *State ex rel. Atchison, Topeka & Santa Fe R.R. v. O'Malley*, 888 S.W.2d 760, 763 (Mo.Ct.App.1994).

For example a substantial number of the railroads subject to the Employers' Liability Act have promulgated rules which prohibit employees from giving information concerning an accident to anyone excepting certain specified company officials and claim agents.

The purpose of the amendment under consideration is to prohibit the enforcement of such rules and permit those who have information concerning the facts and circumstances of a personal injury to give statements to the injured employee or his dependents, or to someone authorized to represent him or them.

In relation to the investigation of facts upon which claims for injuries are based, humanity and justice demand that injured railroad men be accorded as much freedom of action as their employers enjoy.

S.Rep. No. 661, 76th Cong., 1st Sess. 5 (1939). While this Report reveals that the drafters of section 10 were primarily concerned with restrictions imposed by the railroads themselves on their employees, it is patent that section 10 was enacted to equalize the influence of railroads and employees in the conduct of litigation. Since Rule 4.2 in Massachusetts is interpreted to be broadly protective of corporations, it creates just those inequities that Congress specifically chose to rectify by enacting section 10.[5] If section 10 is not the type of legal authorization for ex parte communications anticipated by Rule 4.2, it is difficult to imagine what is.

## IV. CONCLUSION

For the aforementioned reasons, this Court holds that Lockard's ex parte communications with Reilly did not violate the ethical requirements of Rule 4.2 as embodied in Local Rule 83.6(4)(B).

---

**5.** It cannot be said, however, that Congress was unaware of ethical restrictions on ex parte communications when they enacted section 10 in 1939. The ethical rule dates back at least to 1908 See Grievance Comm. for S. Dist. of New York v. Simels, 48 F.3d at 647. Nevertheless, the broad language included in section 10, i.e., "any ... device whatsoever," and the fact that the legislative history cites railroad promulgated rules only as an example, demonstrates that Congress was not solely limiting the ramifications of section 10 to rules written by the railroads.