Gants, J.
The plaintiff, Jacqueline Phillips-Farr (“Phillips-Farr”), is awaiting trial on her complaint alleging that, as area director in New Bedford for the defendant Massachusetts Department of Social Services (“DSS”), she suffered discrimination on the basis of her race and psychological disability. Phillips-Farr has moved for a protective order permitting her attorneys to interview specified current employees of DSS in preparation for trial outside the presence of the Assistant Attorney Generals who represent DSS in this action. Plaintiffs counsel, by seeking judicial authorization in advance of such interviews, properly seeks to ensure that any such interviews do not run afoul of Rule 4.2 of the Massachusetts Rules of Professional Conduct, governing ex parte communications with a represented person.[1]
DISCUSSION
Rule 4.2 provides in its entirety:
In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.
Massachusetts Rule of Professional Conduct 4.2. Comment 4 to Rule 4.2 explains how this rule should be applied to officers and employees of an organization:
*728 In the case of an organization, this Rule prohibits communications by a lawyer for another person or entity concerning the matter in representation with persons having managerial responsibility on behalf of the organization with regard to the subject of the representation, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization. If an agent or employee of the organization is represented in the matter by his or her own counsel, the consent by that counsel to a communication will be sufficient for purposes of this Rule. Compare Rule 3.4(f).
Comment 4, Massachusetts Rule of Professional Conduct 4.2. In short, there are three categories of persons that plaintiffs counsel cannot communicate with unless DSS’s counsel consents, or unless that person is separately represented by counsel and that separate counsel consents to the interview:
1. persons having “managerial responsibility on behalf of the organization with regard to the subject of the representation”;
2. persons “whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability,” generally via principles of respondeat superior; and
3. persons “whose statement may constitute an admission on the part of the organization.” This Court understands this category of persons to be limited to those whose statements, even if not otherwise admissible because not based on firsthand knowledge, would become admissible as vicarious admissions under the principles expressed in Proposed Mass. R. Evid. 801(d)(2)(D). See Ruszcyk v. Secretary of Public Safety, 401 Mass. 418, 421-24 (1988).
The attorneys for plaintiff have furnished a list of the persons they seek to interview. Many of them are managers within DSS, and DSS contends that all of these managers fall within the first category of those with “managerial responsibility on behalf of the organization with regard to the subject of the representation.” This Court disagrees. While this phrase is certainly ambiguous, this Court does not interpret it to mean that it encompasses all employees with any managerial responsibility. Rather, this Court finds that those with “managerial responsibility on behalf of the organization with regard to the subject of the representation” includes those managers involved in managing the litigation. As this Court earlier declared in Edwards v. Massachusetts Bay Transportation Authority:
In legal matters involving organizations, the organization will delegate its decision-making authority to one or more managers, and they will decide, with the advice of the organization’s attorney, whether to bring litigation, how to prosecute or defend it, and on what terms the organization will settle it. Since it is “persons having managerial responsibility on behalf of the organization with regard to the subject of the representation” who will decide these matters on behalf of the organization, Comment 4 protects an organization from having their decisions influenced by discussions with another attorney without the presence or consent of the organization’s own attorney.
12 Mass. L. Rptr. 395, 2000 WL 1786326 at 5. Those with “managerial responsibility on behalf of the organization with regard to the subject of the representation” may possibly also include those whose managerial decisions are, in part, a subject of the litigation. Regardless of whether this Court adopts the more limited or the broader interpretation, it is plain that none of the managers that plaintiffs attorneys wish to interview fall within either interpretation.
None of these managers are engaged in managing this litigation or are participating in any decision regarding the defense or settlement of this litigation. Nor is the conduct of any of them at issue in this litigation. There is no allegation that any of them participated in the alleged discrimination against the plaintiff. Nor were any of these managers even supe- . rior in position to Phillips-Farr at DSS or responsible for evaluating her performance. Therefore, this Court finds that none of these managers are persons who, by their position alone, fall within the first category of persons that plaintiffs counsel cannot communicate with unless DSS’s counsel consents.
It is less clear whether any of the DSS employees, whether managers or non-managers, that plaintiffs attorneys wish to interview fall into the second or third category. If they do, under Rule 4.2, they may not be interviewed, at least not without court approval. However, Rule 4.2 does not prohibit plaintiffs counsel from interviewing DSS employees that do not fall into any of these three categories. This Court recognizes that it pragmatically may not be possible for plaintiffs attorneys to know with certainty before they interview a DSS employee whether that person may fall into the second or third category. This Court also recognizes that Comment 4 to Rule 4.2, through its use of the word “may” in defining the second or third category (rather than the alternative “likely will”), means that the burden of uncertainty falls on plaintiffs counselthat is, when they acknowledge that these persons “may” fall into the second or third category, they are barred from communicating with them.
There is, however, a means to eliminate this uncertainty: the plaintiff may stipulate in writing that (1) any act or omission by these persons in connection with this matter may not be imputed to DSS for purposes of civil liability, and (2) any statement they make may not constitute an evidentiary admission on the part of DSS. If the plaintiff were to file a written stipulation with this Court that, for any DSS employee she interviews without the consent of DSS’s counsel *729 or the person’s individual counsel, (1) any act or omission by these persons in connection with this matter may not be imputed to DSS for purposes of civil liability, and (2) any statement they make may not constitute an evidentiary admission on the part of DSS, then there is no bar under Rule 4.2 to such interviews. Therefore, this Court will ALLOW the plaintiffs motion for a protective order authorizing the interviews of DSS employees who did not have managerial responsibility on behalf of DSS with regard to the subject of the representation if the plaintiff flies this stipulation in writing with the Court. In the absence of such a stipulation, the motion for a protective order is DENIED.
Once plaintiffs counsel interviews a DSS employee pursuant to the stipulation, plaintiff loses for all time the opportunity to argue at trial that this employee’s conduct should be imputed to DSS for purposes of civil liability or that the employee’s statements should be admissible as admissions of DSS. It does not matter if the actual conduct or statement was or was not elicited during the interview.
To be sure, such a stipulation would not prevent these employees from offering testimony at trial. They could testify to anything for which they have personal knowledge, just like any other non-expert witness. The stipulation would simply mean (1) that DSS could not be found liable under respondeat superior for the conduct of these interviewed witnesses, and (2) that otherwise inadmissible statements by these interviewed witnesses declaring that DSS engaged in discrimination would not be admissible as vicarious admissions under the principles expressed in Proposed Mass. R. Evid. 801(d)(2)(D). See Ruszcyk v. Secretary of Public Safety, 401 Mass. at 421-24. In short, these interviewed witnesses would be able to testify to what they saw and heard, and plaintiffs attorneys could argue that what they saw and heard constituted discrimination. Plaintiffs attorneys, however, could not argue that the conduct of these interviewed witnesses constituted discrimination. Nor could these interviewed witnesses be asked at trial about prior statements they made opining that DSS engaged in discrimination.
This Court emphasizes that nothing in this Order requires any of these individuals to agree to be interviewed by the plaintiffs attorneys. Prior to any such interview (as plaintiffs attorneys have already proposed), plaintiffs attorneys shall inform the person interviewed that:
1. the attorneys represent Phillips-Farr in the pending litigation, and describe briefly the identity of the parties and the subject matter of the litigation;
2. the interview is entirely voluntary on the part of the witness;
3. the witness may terminate the interview at any time; and
4. the witness may have his or her own counsel, or DSS’s counsel, present for the interview if the witness prefers.
In closing, this Court will briefly address plaintiffs constitutional argument that Rule 4.2 violates the First Amendment rights of Commonwealth employees. This Court will not adopt this argument for two reasons. First, Rule 4.2 was promulgated by the Supreme Judicial Court, and Comment 1 reflects that the Supreme Judicial Court specifically recognized that the Rule applies to government as well as non-government organizations. This Court shares the usual reluctance of a trial court to consider whether its Supreme Judicial Court acted in violation of the federal and state constitutions. Second, in light of this Court’s ruling, the practical consequence of the plaintiffs argument is that DSS employees should have the right privately to speak with plaintiffs counsel when their conduct may be imputed to DSS and their statements maybe admitted as admissions of DSS. This Court is skeptical that the First Amendment rights of DSS employees reach this far. Nothing in this decision bars these DSS employees from speaking publicly about these matters or from being deposed about them.
Nor is this Court persuaded by plaintiffs argument that, since Rule 4.2 permits employees to speak with opposing counsel as long as they are represented individually by separate counsel, the Rule should also permit employees to represent themselves pro se and consent to such an interview. Pragmatically, such an interpretation of Rule 4.2 is contrary to Comment 4 and would devour it. All that would be left of Comment 4 with this interpretation is a requirement that the adverse attorney obtain the informed consent of the employee to the interview. If such a change in the disciplinary rules is to be made, it can only be made through a revision of Rule 4.2 or Comment 4 by the Supreme Judicial Court.
ORDER
For the reasons detailed above, this Court ORDERS that:
1. Plaintiffs motion for a protective order authorizing the interviews of specified DSS employees who did not have managerial responsibility on behalf of DSS with regard to the subject of the representation is ALLOWED if the plaintiff files in writing with the Court a stipulation that, for any DSS employee she interviews without the consent of DSS’s counsel or the person’s individual counsel, (1) any act or omission by these persons in connection with this matter may not be imputed to DSS for purposes of civil liability, and
(2) any statement they make may not constitute an evidentiary admission on the part of DSS.
2. In the absence of such a stipulation, the motion for a protective order is DENIED.

 The Massachusetts Rules of Professional Conduct were adopted by the Supreme Judicial Court as Supreme Judicial Court Rule 3:07. Since it is confusing to speak of a rule within a rule, this Court, when referencing a rule, is speaking of a rule within the Massachusetts Rules of Professional Conduct.