Robert WAGNER and Margaret Wagner, Plaintiffs

v.

**CITY OF HOLYOKE,**
**et al., Defendants**

**No. CIV.A. 98–30170MAP.**

United States District Court,
D. Massachusetts.

Dec. 21, 2001.

Stewart T. Graham, Jr., Hampden, MA, Bonnie G. Allen, Heisler, Fields & Feldman, Springfield, MA, for Robert Wagner, Margaret Wagner, Plaintiffs.

Harry L. Miles, John J. Green, Jr., John H. Fitz–Gibbon, Green, Miles, Lipton, White & Fitz–Gibbon, Northampton, MA, for City of Holyoke, Daniel Szostkiewicz, Mark Cournoyer, Dennis Egan, defendants.

Harry L. Miles, John J. Green, Jr., John H. Fitz–Gibbon, Green, Miles, Lipton, White & Fitz–Gibbon, Northampton, MA, John C. Sikorski, Robinson, Donovan, Madden & Barry, Springfield, MA, for Stephen Donoghue, defendant.

Michael R. Salvon, National Association of Government Employees, Springfield, MA, Harry L. Miles, John J. Green, Jr., John H. Fitz–Gibbon, Green, Miles, Lipton, White & Fitz–Gibbon, Northampton, MA, for Arthur Monfette, Local 409 of Intern. Brotherhood of Police Officers, defendants.

Timothy F. Murphy, Skoler, Abbott, Hayes & Presser, Springfield, MA, Harry L. Miles, John J. Green, Jr., John H. Fitz–Gibbon, Green, Miles, Lipton, White & Fitz–Gibbon, Northampton, MA, for Arthur Therrien, defendant.

### MEMORANDUM AND ORDER WITH REGARD TO PLAINTIFFS' MOTION FOR AUTHORIZATION TO CONDUCT EX PARTE INTERVIEWS WITH DEFENDANT CITY'S EMPLOYEES (Docket No. 104)

NEIMAN, United States Magistrate Judge.

Robert Wagner ("Wagner") and his wife Margaret Wagner (collectively "Plaintiffs") seek court authorization to interview certain employees of the City of Holyoke (hereinafter "Defendant") outside the presence of Defendant's counsel. Defendant asks that the motion be denied although, as an alternative, suggests the imposition of certain conditions on such interviews

which, in its opinion, would adequately protect its interests. After hearing and for the reasons which follow, the court will allow Plaintiffs' motion subject to particular conditions specified below.

## I. BACKGROUND

This is an employment case. In applicable part, Wagner, a sergeant with the Holyoke Police Department, claims that various individuals and entities retaliated against him because of his cooperation with what he describes as a "probe of corruption" within the department. At present, Plaintiffs seek to interview Police Department employees, as well as other employees of Defendant, who they believe have information with regard to certain relevant events. Plaintiffs propose that they be permitted to interview these individuals—only one of whom has been identified—outside the presence of Defendant's attorneys. Plaintiffs assert that such interviews are necessary in order to adequately prepare for trial.

Defendant describes Plaintiffs' motion as premature. Plaintiffs have not only failed to identify the employees they wish to interview, Defendant asserts, but have failed to articulate the type of information they seek. Should the court deem the motion timely, however, Defendant offers a number of conditions under which the interviews should take place. Plaintiffs find most of these conditions unacceptable.

## II. DISCUSSION

### A.

■ Plaintiffs recognize that their attorneys are barred from speaking with certain of Defendant's employees, at least without the court's permission, by Disciplinary Rule 4.2 of the Massachusetts Rules of Professional Conduct. Rule 4.2 provides that "[i]n representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so." The rule is designed "to preserve the mediating role of counsel on behalf of their clients and to protect clients from overreaching by counsel for adverse interests." *Pratt v. Nat'l R.R. Passenger Corp.*, 54 F.Supp.2d 78, 79 (D.Mass.1999).

With regard to organizational employees, comment [4] to Rule 4.2 states, in pertinent part, as follows:

[T]his Rule prohibits communications by a lawyer for another person or entity concerning the matter in representation with persons having managerial responsibility on behalf of the organization with regard to the subject of the representation, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization.

Although comment [4] is technically not part of the rule, courts have taken the comments to be important "guides to interpretation." *Edwards v. MBTA*, 2000 WL 1786326, at *4, 12 Mass. L. Rptr. 395 (Mass.Super. Dec. 7, 2000). *See, e.g., Kaveney v. Murphy*, 97 F.Supp.2d 88, 90 (D.Mass.2000). As District Judge Nancy Gertner has explained, comment [4] "not only prohibits ex parte contact with persons having managerial responsibility, and those persons whose acts and omissions could be imputed to the organization for liability purposes, but also ex parte contact with any person whose statements may constitute an admission on the part of the

organization." *Kaveney*, 97 F.Supp.2d at 90.[1]

■ Rule 4.2 has engendered a spate of decisions, including at least one from this court, *Horney v. Westfield Gage Co.*, Civil Action No. 99–30175–KPN (Docket No. 50), since it became effective on January 1, 1998. *See, e.g., Kaveney, Pratt* and *Hurley,* supra. *See also In re John Doe, Inc.*, 194 F.R.D. 375 (D.Mass.2000); *Pardo v. Gen. Hosp. Corp.*, 2000 WL 33170689 (Mass.Super. Oct. 31, 2000); *Patriarca v. Ctr. for Living & Working, Inc.*, 2000 WL 1273371, 11 Mass. L. Rptr. 629 (Mass.Super. May 30, 2000); *Rockland Trust Co. v. Computer Associates Intern., Inc.*, 1999 WL 95722 (D.Mass. Feb. 19, 1999). Suffice it to say, the courts have generally agreed that they have the power to permit such ex parte communications in particular circumstances. In this vein, the American Bar Association has defined the "authorized by law" language in Rule 4.2 as including a court order. *See* ABA Committee on Ethics and Professional Responsibility Formal Opinion 95–396.

The fact that courts have had to address Rule 4.2 so often, weighing the relative interests and needs of the parties case by case, is more a reflection of the rule's lack of clarity than any desire to insert themselves in what should be the self-executing application of the rules of professional conduct.[2] Presumably, the Massachusetts Supreme Judicial Court will provide great-

er guidance soon. *See Rule 4.2 is a Controversial Topic,* MASSACHUSETTS LAWYERS WEEKLY, Nov. 19, 2001, at 1 (noting that "[t]he Supreme Judicial Court recently heard oral argument in [*Messing, Rudavsky & Wekiky. P.C. v. President and Fellows of Harvard College* (SJC–08592),] a case involving Rule 4.2 that could shape the contours of this controversial area of employment law").

## B.

■ As to the case at bar, the court is prepared to allow informal interviews, albeit with some conditions. As Judge Gertner pointed out in *Kaveney:* "Employment cases ... present the most compelling case for court authorization of ex parte contact between the plaintiff's counsel and the defendant's employees ...." By barring ex parte contact with the employee-witnesses, the search for the truth is frustrated and Plaintiff's counsel is hindered in preparation for trial. *Id.*, 97 F.Supp.2d at 94 (citations omitted).

Before proceeding further, however, the court wishes to make several additional observations. First, as a general proposition, informal interviews can play as important a role as depositions in pretrial discovery:

A lawyer talks to a witness to ascertain what, if any, information the witness may have relevant to his theory of the

---

1. Disciplinary Rule 7–104(A)(1), the predecessor to Rule 4.2, similarly prohibited ex parte contact with parties known to be represented by counsel. Comment [4], however, appears to have broadened the scope of the old rule, although not without some criticism. For example, Chief Judge William G. Young has described the new rule as "strikingly protective of corporations," *Pratt,* 54 F.Supp.2d at 80, and Chief Magistrate Judge Robert B. Collings has indicated that "[t]he truth-seeking process may be frustrated" insofar as Rule 4.2 is tied to the Federal Rules of Evi-

dence, *Hurley v. Modern Continental Const. Co.*, 1999 WL 95723, at *2 (D.Mass. Feb.19, 1999).

2. As Judge Young has explained, such individualized consideration "is wasteful of judicial resources, runs the risk of treating similarly situated litigants differently, and ... fails to provide attorneys with any practical standard by which to conduct discovery." *Siguel v. Trustees of Tufts College,* 1990 WL 29199, at *4 (D.Mass. Mar.12, 1990).  .

case, and to explore the witness' knowledge, memory and opinion .... In contrast to the pretrial interview with prospective witnesses, a deposition serves an entirely different purpose, which is to perpetuate testimony, to have it available for use or confrontation at the trial, or to have the witness committed to a specific representation of such facts as he might present. A desire to depose formally would arise normally after preliminary interviews might have caused counsel to decide to take a deposition.

*IBM Corp. v. Edelstein,* 526 F.2d 37, 41 and n. 4 (2d Cir.1975) (quoted in *Kaveney,* 97 F.Supp.2d at 94–95).

Second, Plaintiffs wisely do not seek to informally interview any of the named defendants without that individual's counsel's consent. This, of course, would be prohibited by the rule itself, absent specific legal authorization.

Third, the court will follow Plaintiffs' lead and assume, without deciding, that Rule 4.2 applies to *former* employees. The issue of Rule 4.2's applicability to former employees has been the subject of a variety of court opinions. *See, e.g., Pardo, Patriarca, Rockland Trust* and *Siguel,* supra.

Fourth, the court notes that Plaintiffs have not attempted to distinguish between those employees whose statements may constitute "admissions" on the part of Defendant and other employees for whom no such admissions are possible.[3] Perhaps out of an excess of caution—not knowing in advance whether the information elicited will be binding on Defendant—Plaintiffs' counsel seek broad permission under Rule 4.2 to contact *any* employee, although, as indicated at oral argument, they

only have approximately ten employees in mind.

Finally, Plaintiffs cannot inquire into matters protected by the attorney-client privilege or work product doctrine during the course of their interviews. Plaintiffs have acknowledged at least the attorney-client restriction.

### C.

■ These preliminary matters aside, three questions remain. First, should Plaintiffs, as Defendant asserts, have to identify, through the submission of proposed questions, the type of information they seek? Second, must Plaintiffs, as Defendant argues, specifically identify the employees they intend to contact? And third, are Plaintiffs permitted to interview what Defendant describes as a "control group" of employees, that is, those with managerial responsibility?

As to the first question, the court will not require Plaintiffs to submit proposed written questions for Defendant's review. That condition, as far as the court is aware, has never been imposed by any court and, in any case, would give Defendant inappropriate access to the Plaintiffs' counsels' thought processes. Nor does the court believe it necessary for Plaintiffs to submit proposed questions for the court's *in camera* review. *Compare Kaveney,* 97 F.Supp.2d at 96. As Plaintiffs explain, "[c]ounsel will limit their questions to the subject matter[ ] of this case and the particular employee's knowledge of particular events, orders, or statements of other persons, or the existence and location of documents." (Docket No. 114, Pls.' Reply Brief, at 5.) Except for any inquiry with regard to "the existence and location of documents," these self-imposed limits, in

---

3. Unfortunately, there has been a fair amount of confusion between the concept of "admissions" and mere "admissibility." *See Niesig*

*v. Team I,* 76 N.Y.2d 363, 559 N.Y.S.2d 493, 558 N.E.2d 1030, 1035 (1990).

the court's estimation, are sufficient. The court deems the discovery process set out in FED. R. CIV. P. 34 and 45(a)(1)(C) not only sufficient, but exclusive with respect to documents to be produced by a party.

With regard to the second question, the court, for similar reasons, will not require Plaintiffs to identify to Defendant the ten or so employees they intend to contact. Given the particularly contentious issues at play, the court does not deem it appropriate for Plaintiffs to identify the employees they wish to interview. Moreover, the court wishes to guard against Plaintiffs revealing their attorneys' thought processes. In any case, as further explained below, Plaintiffs' obligation to identify trial witnesses in the near future will provide Defendant with the identity of any interviewees whom Plaintiffs intend to call and the opportunity to speak with or depose them.

■ The third question is somewhat thornier but nonetheless resolvable. Defendant seeks to preclude interviews of its "control group," which it defines as "all members of the managerial team of the Holyoke Police Department, including all officers who hold superior rank to ... Wagner." (Docket No. 112, Def.'s Opp'n, at 5.) For the reasons which follow, however, the court will not impose such a limitation on Plaintiffs' interviews.

For one thing, Defendant cites no case law with respect to the proposed "control group" condition. To be sure, comment [4] to Rule 4.2 does identify three categories of employees, including those with "managerial responsibility," for whom a litigant had best seek court permission to interview: (1) "persons having managerial responsibility on behalf of the organization with regard to the subject of the representation"; (2) "any other person whose act or omission in connection with that matter may be imputed to the organization for

purposes of civil or criminal liability"; and (3) any other person "whose statement may constitute an admission on the part of the organization." *See Edwards,* 2000 WL 1786326, at \*3. However, Defendant has not identified how any one of the managerial class it wishes to exclude from inquiry has responsibility with regard to the subject matter of this litigation. *See id.; Phillips–Farr v. Comm. of Mass.,* 2001 WL 1455945, at \*2 (Mass.Super. Nov. 16, 2001).

Still, the court recognizes that all three categories appear to include employees whose statements may be imputed to Defendant. *See Hurley,* 1999 WL 95723, at \*2 (noting that ex parte "contact is prohibited if it is merely *possible* that the statement might constitute an admission") (emphasis in original); *Phillips–Farr,* 2001 WL 1455945, at \*2 ("Those with 'managerial responsibility on behalf of the organization with regard to the subject of the representation' *may possibly* include those whose managerial decisions are, in part, a subject of the litigation.") (emphasis added). Nonetheless, the court, in order to balance the parties' relative interests, will authorize the requested interviews without reference to the managerial class identified by Defendant. In doing so, the court has considered several factors.

First, in light of the parties' representations at oral argument, the court understands that none of the targeted employees have managerial responsibility with regard to the subject matter of this litigation. Second, the court believes that Defendant "can easily provide its own version of the events by eliciting statements from the very same employees to counteract any potential distortion, or mischaracterization on the part of [Plaintiffs'] counsel." *Kaveney,* 97 F.Supp.2d at 96. *See Morrison v. Brandeis Univ.,* 125 F.R.D. 14, 19 (D.Mass.1989) (holding that the fact that

certain statements may be admissible against the employer "in and of itself, does not mean that [the employer's] counsel has to be present at the interviews of [targeted employees] in order to ensure effective representation of [the employer]"). Finally, the informal interviews will take place in the context of the parties' other discovery obligations. Should Plaintiffs decide that one or more of the interviewed employees will be called as witnesses, Plaintiffs have the obligation to so notify Defendant pursuant both to FED. R. CIV. P. 26(e) and the July 25, 2001 Procedural Order governing the final pretrial conference scheduled for January 24, 2002.[4]

### III. *CONCLUSION*

For the reasons stated, Plaintiffs' motion is ALLOWED subject to the following additional conditions:

1. The initial contact, if any, with Defendant's employees shall be made by Plaintiffs' counsel. Plaintiffs themselves are prohibited from personally contacting or attempting to contact any employee in connection with this procedure.

2. Upon contacting the employee, Plaintiffs' counsel will immediately disclose his or her capacity as counsel for Plaintiffs in this litigation. In addition, Plaintiffs' counsel will advise the employee that the employee may consent to the interview, may refuse to meet with Plaintiffs' counsel, or may consent to be interviewed only in the presence of his or her own counsel or Defendant's counsel. In addition, Plaintiffs' counsel will inform the employee that, should the interview take place, the employee may terminate the interview at any time.

3. A request by any employee that the interview take place only in the presence of his or her attorney and/or Defendant's attorney will be honored.

4. Plaintiffs' counsel will not seek or inquire into any information protected by the attorney-client privilege or the work product doctrine.

IT IS SO ORDERED.

---

4. In this regard, Plaintiffs agreed at oral argument that they will identify for Defendant all of the interviewed employees they intend to call as witnesses, as well as the purpose of the testimony, by January 11, 2002. Plaintiffs also agreed that Defendant would have the right to depose all such employees prior to trial despite the expiration of the deposition deadline.